IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
———————————————————————————————

UNITED STATES OF AMERICA,

v.                                                              **DECISION AND ORDER**

ALEX KOSCHTSCHUK, et al.,                    09-CR-0096(S)(M)

                                    Defendants.
———————————————————————————————

By motion docketed on July 1, 2011 [549],[1] defendant Martin Whiteford seeks

expansion of the scope of the evidentiary hearing which concluded on June 17, 2011, and disclosure

of portions of the grand jury proceedings.  The government opposes the motion [560]. Oral

argument was held on July 28, 2011 [571]. For the following reasons, the motion is granted.


**BACKGROUND**

The relevant procedural history of this case is outlined in my March 10, 2011

Decision and Order [466], and need not be repeated here.  In accordance with that Decision and

Order, a hearing in connection with defendants' Franks[2] and "outrageous government conduct"

claims was held on April 27, 29 and June 15, 16 and 17, 2011 [539, 540, 555, 569, 570]. Based

upon evidence developed during the hearing, on June 17, 2011 counsel for defendant Whiteford

orally moved for expansion of the scope of the hearing [570, pp.704-06, 857 *et seq.*], and the other

defendants joined in that oral motion [570, p.707]. This written motion followed.

In support of his motion, defendant focuses on the April 28, 2009 grand jury

testimony by FBI Special Agent ("SA") Kenneth Jensen, Jr. in response to a question from AUSA

———————————————————

[1]        References are to CM/ECF docket entries.

[2]        Franks v. Delaware, 438 U.S. 154 (1978).

Anthony Bruce concerning the August 20, 2008 axe handle assault on Kingsmen Motorcycle Club member Eugene Siminski:

> Q:    "My understanding, Mr. Ignasiak was along for the ride but did not participate in the incident?
>
> A:    Yes, in a manner of speaking." LaTona Affidavit [549], ¶10.

Defendant suggests that "if David Ignasiak's participation in the August 20, 2008 attack was known by Mr. Bruce, then he deliberately and intentionally elicited false testimony before the grand jury". Id., ¶11. He argues that "those defendants named in Counts 8 and 9 [of the Third Superseding Indictment] have been prejudiced as the prosecutorial misconduct substantially influenced the grand jury's decision to indict and there also is grave doubt that the decision to indict was unaffected by the misconduct".  Id., ¶23 (*citing* Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988)).  Defendant also argues that these misrepresentations warrant the taking of additional testimony in connection with defendants' Franks and "outrageous government conduct" claims.

In opposing the motion, the government did not offer affidavits by either SA Jensen or AUSA Bruce to explain or vouch for the accuracy of their April 28, 2009 grand jury  exchange. Instead, it argues that since other witnesses subsequently testified as to Ignasiak's involvement in the assault, the grand jury could not have been misled. Government's Memorandum in Response [560], pp.3-9.

## ANALYSIS

**A.     Was False Testimony Knowingly Presented to the Grand Jury on April 28, 2009?**

Needless to say, defendant's suggestion that AUSA Bruce "deliberately and intentionally elicited false testimony before the grand jury" is a grave accusation. While I am reluctant to conclude that an FBI agent may have knowingly offered false testimony to a grand jury, or that an Assistant U.S. Attorney may have knowingly elicited that testimony, the evidence submitted to me thus far is troubling, to say the least.

It is undisputed that on August 21, 2008 (the day after the assault on Siminski), Ignasiak delivered to SA Jensen and SA Frank Runles a recording of the preceding day's events surrounding the assault on Siminski.  During the hearing before me, SA Jensen testified that he listened to the recording when he was preparing his October 22, 2008 affidavit to Judge Skretny in support of a Title III warrant [569, p.614].  At oral argument of this motion, AUSA Bruce acknowledged that he "knew the contents of the recording" at the time he posed his question to SA Jensen on April 28, 2009. [3]

The government admits that "from the recording of the incident, it is clear that Ignasiak was fully involved in giving directions to former co-defendant Paul Roorda as he (Roorda) tried to maneuver the vehicle close enough to Siminski so that the passengers could easily get out and assault Siminski". Government's Memorandum in Response [560], p.4. SA Jensen admitted hearing Ignasiak stating "hurry up - get behind him - pull up - ready, let's go" [555, p.338].  He knew that Ignasiak was "participating in an assault" [569, p.671]; in fact, when asked whether there

---

[3]     Quotations from oral argument are based on my chamber's informal transcription of the digital recording.

was "any doubt in [his] mind that [Ignasiak] participated in that attack", he answered "no" [569, p.646].

At oral argument of this motion, AUSA Bruce stated that "we always knew that" Ignasiak was one of the four individuals who attacked Siminski. SA Jensen's October 22, 2008 affidavit to Judge Skretny states that "on August 20, 2008, a group of CFMC [Chosen Few Motorcycle Club] members attacked a member of the KMC [Kingsmen Motorcycle Club] while he was stopped at a stoplight in the City of Buffalo, New York". [551, p.16]. In response to questioning by AUSA Bruce at the hearing before me, SA Jensen admitted that Ignasiak was one of the attackers:

> Q. "And that group, you used the word group?
>
> A. Yes.
>
> Q. That would have included who?
>
> A. Bradley Beutler, Paul Roorda, David Ignasiak and Martin Whiteford.
>
> Q. And did you say anything in that particular part of your affidavit to up play or downplay any one of those persons' *participation* in it?
>
> A. No." [569, p.616] (emphasis added).[4]

At oral argument, AUSA Bruce stated "well, participated, attacked, to me it is the same thing". Given that admission, I can see no innocent explanation for how he could have suggested to the grand jury on April 28, 2009 that Ignasiak was merely "along for the ride" and did

---

[4]    Whereas SA Jensen's October 22, 2008 affidavit to Judge Skretny did not name Ignasiak as one of the attackers, the affidavit which he submitted to me on May 6, 2009 (merely eight days after his grand jury testimony) did: "Based on recordings, I am aware that on August 20, 2008, BRADLEY BEUTLER, MARTIN WHITEFORD, PAUL ROORDA, and David Ignasiak attacked a KMC member identified . . . as 'Gene' with an axe handle" ([555, p.406]; government ex. 2 [550-2], ¶14).

*not* participate in the August 20, 2008 assault on Eugene Siminski.  By directing Paul Roorda and encouraging the others who were with him in the vehicle, Ignasiak clearly "participated" in the incident at a level sufficient to render him "punishable as a principal" as an aider and abettor of the assault, pursuant to 18 U.S.C. §2(a) and (b).  *See* United States v. Holley, 23 F.3d 902, 908 (5th Cir.), cert. denied, 513 U.S. 1043 (1994), 513 U.S. 1083 (1995) ("To 'participate' means to 'engage in some affirmative conduct designed to aid the venture'"); United States v. Pipola, 83 F.3d 556, 562 (2d Cir.), cert. denied, 519 U.S. 869 (1996) ("To be convicted of aiding and abetting, the defendant must have taken some conscious action that furthered the commission of the underlying crime").[5]  In fact, SA Jensen admitted knowing that Ignasiak's participation in the assault was a crime for which he could have been arrested. [569, p.671].

I suspect that AUSA Bruce was motivated more by zeal for the government's position than by malice toward defendants.  However, there are some lines which not even the most zealous prosecutor may cross.  "He may prosecute with earnestness and vigor - indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones."  Berger v. United States, 295 U.S. 78, 88 (1935).  "The prosecutor's right to exercise some discretion and selectivity in the presentation of evidence to a grand jury does not entitle him to mislead it."  United States v. Ciambrone, 601 F.2d 616, 623 (2d Cir. 1979).

In fairness to AUSA Bruce and the government, however, I note that in testimony before the grand jury in May and August, 2009, two witnesses more fully described Ignasiak's

---

[5]    Which presumably is why SA Jensen's May 6, 2009 affidavit stated that Ignasiak was one of the individuals who attacked Siminski, even though he did not actually swing the axe handle. *See also* count nine of the Third Superseding Indictment ([143], pp.41-42), charging defendants Koschtschuck, Beutler, Summerville and Whiteford with assaulting Siminski in violation of 18 U.S.C. §§2 and 1959(a)(3), although not all of them handled the weapon.

involvement in the August 20 attack. Government's Memorandum in Reply [560], pp. 5-9.  For the following reasons, the effect of that testimony *vis-a-vis* the April 28, 2009 testimony of SA Jensen must be further explored.


**B.      Are the Defendants Entitled to Disclosure of Grand Jury Proceedings?**

Fed. R. Crim. P. ("Rule") 6(e)(3)(E)(ii) permits disclosure of  grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment". While a defendant seeking such disclosure "must make more than a general unsubstantiated or speculative allegation of impropriety" (government's Memorandum in Response [560], p.9), for the reasons previously stated, at this point defendant's allegations appear to be neither unsubstantiated nor speculative.

A court may "dismiss an indictment because of misconduct before the grand jury . . . where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions." United States v. Williams, 504 U.S. 36, 46 (1992).  Among those rules are "[18 U.S.C.] §1623 (criminalizing false declarations before grand jury) . . . [and] §1622 (criminalizing subornation of perjury)". Id., n.6.  "Due process considerations prohibit the government from obtaining an indictment based on known perjured testimony." United States v. Hogan, 712 F.2d 757, 759 (2d Cir.1983).

However, the court has "no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct". Bank of Nova Scotia, 487 U.S. at 263.  "The prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict.  If violations did substantially

influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless." Id.

Whether prejudice may have occurred as a result of prosecutorial misconduct cannot be determined absent consideration of the proper nature and function of the grand jury. Some courts have described the grand jury as "a law enforcement agency", United States v. Cleary, 265 F.2d 459, 461 (2d Cir.), cert. denied, 360 U.S. 936 (1959), or "an accusatory body under the (almost) complete control of the prosecutor". In re Grand Jury Proceedings 219 F.3d 175, 189 (2d Cir. 2000). The government appears to share that view in this case: as stated by AUSA Bruce, "the decision of what to indict and who to indict and all of those various things are decisions that are left exclusively to the executive branch of the government . . . . [The grand jury] can ask questions, they can suggest things - quite frankly, that does not usually happen but that is the way it goes".

I do not share that view. "When the framers of the Bill of Rights directed in the Fifth Amendment that 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury,' they were not engaging in a mere verbal exercise." United States v. Estepa, 471 F.2d 1132, 1136 (2d Cir.1972). "The grand jury is "a constitutional fixture in its own right that operates independently of both the judiciary and the executive branch." United States  v. Leeper 2006 WL 1455485, *2 (W.D.N.Y. 2006) (Arcara, J.).

As contemplated by the Fifth Amendment, it is the grand jury - not the government - which calls the shots. "The purpose of the grand jury is to remove from prosecutors the power to initiate prosecutions for felonies and instead to place that power with a group of citizens acting independently of either prosecuting attorney or judge." United States v. ITT Blackburn Co., a Division of ITT, 824 F.2d 628, 630 (8th Cir. 1987); Stirone v. United States, 361 U.S. 212, 218 (1960). "The right to have the grand jury make the charge *on its own judgment* is a substantial right

which cannot be taken away." <u>Stirone</u>, 361 U.S. at 218-19 (emphasis added); <u>United States v. Milstein</u>, 401 F.3d 53, 65 (2d Cir. 2005).

"Accordingly, to be valid, the Fifth Amendment requires that an indictment issue from an *independent* and *unbiased* grand jury." <u>Leeper</u>, 2006 WL 1455485, *2 (emphasis in original). "Dismissal of an indictment is . . . warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's ability to make an informed and objective evaluation of the evidence presented to it." <u>Id.</u> *4. "The inquiry is focused on whether the alleged errors infringed upon the grand jury's ability to exercise *independent* judgment". <u>Id.</u> (emphasis added); *see also* <u>Bank of Nova Scotia</u>, 487 U.S. at 259 ("In the cases before us we do not inquire whether the grand jury's independence was infringed. Such an infringement may result in grave doubt as to a violation's effect on the grand jury's decision to indict").

In making that determination, the fact that probable cause may exist to support the indictment does not end the court's inquiry, since the grand jury "does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not". <u>Vasquez v. Hillery</u>, 474 U.S. 254, 263 (1986). "The grand jury is not bound to indict in every case where a conviction can be obtained." <u>Id.</u> For example, it may "reject an indictment that, although supported by probable cause, is based on governmental passion, prejudice, or injustice". <u>United States v. Marcucci</u>, 299 F.3d 1156, 1164 (9th Cir. 2002), <u>cert. denied</u>, 538 U.S. 934 (2003).[6]

---

[6]     "Where the grand jury truly adds value is through its ability to exercise robust discretion not to indict where probable cause nevertheless exists." Fairfax, "Grand Jury Discretion and Constitutional Design", 93 <u>Cornell L. Rev.</u> 703, 706 (2008). "By refusing to indict, the grand jury has the unchallengeable power to defend the innocent from government oppression by unjust prosecution. And it has the equally unchallengeable power to shield the guilty." <u>United States v. Navarro-Vargas</u>, 408 F.3d 1184, 1212 (9th Cir.), <u>cert. denied</u>, 546 U.S. 1036 (2005).

Without reviewing all of the grand jury proceedings regarding the August 20, 2008 attack, I cannot determine what role the April 28, 2009 question and answer may have played in the grand jury's decision. While it is true that other witnesses later testified concerning Ignasiak's involvement in the August 20 incident, the fact remains that AUSA Bruce's question to SA Jensen mentioned his "understanding" that Ignasiak was *not* involved.  In effect, he thereby "became an unsworn witness before the grand jury".  Leeper, 2006 WL 1455485, *3.

It is reasonable to infer that AUSA Bruce's statement as to his understanding - particularly when confirmed by an FBI agent - might have a greater impact than that of another witness. "The prosecutor is cloaked with the authority of the United States Government; he stands before the jury as the community's representative.  His remarks are those, not simply of an advocate, but rather of a federal official duty - bound to see that justice is done.  The jury knows that he has prepared and presented the case and that he has complete access to the facts uncovered in the government's investigation.  Thus, when the prosecutor conveys to the jurors his personal view . . ., it may be difficult for them to ignore his views, however biased and baseless they may in fact be." United States v. Modica, 663 F.2d 1173, 1178-79 (2d Cir. 1981), cert. denied, 456 U.S. 989 (1982).[7]

But for AUSA Bruce's question and SA Jensen's answer, the grand jury might well have decided that Ignasiak himself should be indicted for his role in the August 20, 2008 assault. Although AUSA Bruce stated at oral argument that "he cannot as a matter of law be a co-

---

[7]    *See also* Berger, 295 U.S. at 88 ("It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none").

conspirator", that is simply not true. Ignasiak testified that he was repeatedly warned that he was subject to prosecution if he engaged in criminal activity while working for the FBI ([540, p.166), and SA Frank Runles testified that Ignasiak was warned that "there would be no protection for him by the FBI or the Federal Government if he had done something". [570, p.721]. Thus, but for the government's decision not to prosecute him, there is no apparent reason why Ignasiak was not indicted for his participation in the August 20, 2008 assault. If he had been, this might be a much different case.

Alternatively, had they not believed AUSA Bruce and SA Jensen, the grand jury might have refused to indict even if there was probable cause, reasoning that it would be unjust to indict the others where Ignasiak was equally involved. Marcucci, 299 F.3d at 1164 (recognizing that the "grand jury [may] reject an indictment that, although supported by probable cause, is based on governmental passion, prejudice, or injustice").

Absent a review of the entire grand jury proceedings relating to the August 20, 2008 incident, it is premature for me to assess the impact of the April 28, 2009 testimony on the grand jury's independence. What is clear, however, is that further review is warranted.

**CONCLUSION**

For these reasons, defendant's motion to expand the scope of the evidentiary hearing [549] is granted. Unless implementation of this Decision and Order is stayed by Judge Skretny, on or before August 22, 2011, the government shall produce, for my *in camera* review, all portions of the grand jury proceedings which in any way relate to the incident of August 20, 2008 - including all testimony and instructions given to the grand jury concerning Ignasiak's relationship to the

government, his role in the assault (including whether or how the government explained its change of position as to his involvement), and whether he could be prosecuted as a result of his actions.

Upon my review of those materials, I will decide which portions (if any) should be released to defense counsel, and how the issue should be briefed by the parties.[8]  However, subject to possible reconsideration at a later date, at this point I see no need for further live testimony.

**SO ORDERED**.

DATED:      August 1, 2011

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

---

[8]      *See* Leeper  2006 WL 1455485, *2 ("The Court asked to see the transcripts of the . . . grand jury proceedings. The transcripts were provided to the Court on Thursday, May 18, 2006. The Court then directed that copies be provided to defense counsel and that the parties provide briefing as to the propriety of the . . . grand jury proceeding").